# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **ALPHONSO DEWAYNE WEBB** | **CASE NO. 3:18-CV-1058** |
| **VERSUS** | **MAG. JUDGE KAREN L. HAYES** |
| **ANDREW SAUL, COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION** | |

## MEMORANDUM RULING

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment. For reasons assigned below, the decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** with prejudice.

## Background & Procedural History

Alphonso Webb filed the instant applications for Title II disability insurance benefits and Title XVI supplemental security income payments on September 30, 2015. (Tr. 10, 153-161). He alleged disability as of May 18, 2015, because of glaucoma, back problems, diabetes, and pancreatitis. (Tr. 193, 200). The state agency denied the claims at the initial stage of the administrative process. (Tr. 54-73, 78-84). Thereafter, Webb requested and received a May 15, 2017, hearing before an Administrative Law Judge ("ALJ"). (Tr. 24-53). However, in an August 28, 2017, written decision, the ALJ determined that Webb was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that he was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 17-19). Webb appealed the adverse decision to the Appeals Council. On June 15, 2018, however,

the Appeals Council denied Webb's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On August 16, 2018, Webb sought review before this court. He seeks reversal for further administrative proceedings on the grounds that the ALJ's residual functional capacity assessment is not supported by substantial evidence and is tainted by legal error. Following the submission of briefs, the matter is ripe.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232 (5th Cir. 1994).

## **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical

or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

## ALJ's Findings

**I.     Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that the claimant had not engaged in substantial gainful activity during the relevant period. (Tr. 12-13). She noted, however, that the claimant was working part-time, approximately 15 to 20 hours per week, but that his earnings were not sufficient to meet the substantial gainful activity level. *Id.* At step two, she found that the claimant suffered severe impairments of diabetes, degenerative disc disease of the lumbar spine, chronic kidney disease, and glaucoma. (Tr. 13-14).[1] The ALJ concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 14-15).

**II.    Residual Functional Capacity**

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform light work,[2] but that he can only occasionally balance, stoop, kneel, crouch

---

[1] She further determined that his allegation of diabetic retinopathy was not substantiated by the medical record. *Id.* Moreover, his medically determinable impairments of headaches and depressive disorder were non-severe. *Id.*

[2]    Light work entails:

4

and crawl; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; and perform no work around hazards, such as unprotected heights and dangerous, moving machinery. (Tr. 15-17).

III.    **Steps Four and Five**

With the assistance of a vocational expert ("VE"), the ALJ determined at step four of the sequential evaluation process that the claimant was unable to perform his past relevant work. (Tr. 17). Accordingly, she proceeded to step five. At this step, the ALJ determined that the claimant was an individual closely approaching advanced age, with at least a high school education, and the ability to communicate in English. (Tr. 18-19). Transferability of skills was not material to the decision. *Id*.

The ALJ next observed that given the claimant's vocational factors, and if he had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rules 202.14, Table 2, Appendix 2, Subpart P, Regulations No. 4; Tr. 18. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted the VE to determine whether, and to what extent, the additional limitations eroded the occupational base for light work. (Tr. 18-19). In response, the VE identified the representative jobs of price marker, *Dictionary of Occupational Titles* ("DOT")

---

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

5

Code # 209.587-014; housekeeper, DOT Code # 323.687-014; and labeler, DOT # 920.687-126, that were consistent with the ALJ's RFC and the claimant's vocational profile. (Tr. 18-19, 49-50).[3]

### Non-Exhaustive Chronology of Relevant Medical Evidence[4]

A March 11, 2015, eye examination revealed corrected visual acuity of 20/20 bilaterally, with visual field defects. (Tr. 509-511).

An April 16, 2015 CT scan of the head showed no acute findings. (Tr. 428).

On September 15, 2015, plaintiff was diagnosed with diabetes mellitus. (Tr. 903-904). He was instructed to eat healthier and exercise. *Id.*

Webb was hospitalized at St. Francis Medical Center from September 17-20, 2015, for diabetic ketoacidosis, acute pancreatitis, severe hypertriglyceridemia, systemic inflammatory response syndrome, and acute kidney injury. (Tr. 578-579). He had been experiencing abdominal pain, with nausea, and vomiting for the past three days prior to admission. (Tr. 580-582). He described his pain as a ten on a ten-point scale. *Id.* However, he had no focal neurologic deficits. *Id.* Review of systems in the emergency room prior to admission revealed no back, muscle, or joint pain. (Tr. 586-588). Webb also had no headaches, dizziness, or weakness. *Id.* Upon examination, he had normal range of motion and normal strength. *Id.*

During his September 2015 hospitalization, plaintiff was diagnosed with diabetes

---

[3] The VE responded that for the price marker job, there were 273,000 positions available nationwide. (Tr. 49-50). In addition, for the housekeeper job, there were 137,000 positions available nationally. *Id.* Finally, for the labeler job, there were 28,000 jobs available in the country. *Id.* This incidence of work constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

[4] Although the administrative record is a lengthy 1349 pages, the overwhelming majority of the treatment records pertain to plaintiff's September 2015 hospitalization.

mellitus and hypertriglyceridemia. (Tr. 671-675). He was transferred and admitted to the Shreveport Veterans Administration ("VA") hospital from September 21-27, 2015. *Id.* He had moderate upper abdominal pain. *Id.* It was noted that he had ten years of military service. *Id.* He was prescribed Tramadol for his epigastric pain. *Id.* A September 24, 2015, chest x-ray showed pleural effusion consistent with pneumonia. (Tr. 610).

VA records from September 24, 2015, noted that Webb was not eligible for a VA pension because he did not serve during a war time era. (Tr. 772). However, the VA provided Webb with information regarding how to apply for social security disability. *Id.*

On October 15, 2015, Webb had mild to moderate abdominal pain, but no muscle or joint pain. (Tr. 1113-1116). He also had no focal deficits and a normal gait. *Id.*

On October 29, 2015, plaintiff went to the VA for diabetes foot care-mycotic thick nails. (Tr. 670). He denied pain at that time. *Id.*

A November 30, 2015, ultrasound of the gall bladder showed that the gallbladder was contracted at the proximal portion. (Tr. 609). A previously suspected tiny stone in the neck of the gallbladder was not identified due to the contracted status. *Id.* There was no biliary dilatation. *Id.*

On December 7, 2015, Webb had no neurovascular deficits, no edema in his extremities, and no functional loss. (Tr. 1097-1101).

On December 23, 2015, Webb's small blisters on his feet were gone, and he had no pain. (Tr. 1089-1090). Although his "NVS" was diminished, he still had protective sensation. *Id.* An ultrasound of the gallbladder showed hepatomegaly, but otherwise no acute abnormality. (Tr. 913-914).

On March 4, 2016, Webb reported chronic, intermittent pain in his stomach, mid-back, and feet that was an eight on a ten-point scale. (Tr. 1083-1086). There were no aggravating

factors, and the cause was unknown. *Id.* Webb told another provider that he had mild low back pain that was stable. (Tr. 1077-1079). He ambulated without difficulty. *Id.* He also had no edema or functional loss. *Id.*

On March 24, 2016, plaintiff's pain score was a zero. (Tr. 1075-1076). He had no problems or pain associated with his feet. *Id.*

On April 5, 2016, Webb was seen by mental health. (Tr. 1072-1073). The social worker noted that Webb served in the army from 1982-1993. (Tr. 1072). He served in Desert Storm and did tours in Korea and Panama. *Id.* Webb stated that his time in Korea was stressful because there was a lot of shooting. *Id.* He also lost some "buddies" during Desert Storm. *Id.* He stated that he becomes depressed and irritable and wanted to withdraw from others. *Id.* He was prescribed Fluoxetine, but never took it. *Id.* He stated that he thought he was at the point that he needed medication to help with his moods. *Id.* He was diagnosed with depressive disorder, NOS and assigned a Global Assessment of Functioning ("GAF") score of 55. *Id.*[5]

On June 22, 2016, Webb reported no joint pain, redness, swelling, or heat. (Tr. 1058-1062). He had good range of motion, no neck or back pain and no weakness or numbness. *Id.*

On July 19, 2016, plaintiff reported that he had chronic back pain that was a six on a ten-point scale, which he tolerated. (Tr. 1043). He denied the need to visit urgent care. *Id.*

On August 5, 2016, Webb reported that he had been more depressed recently. (Tr. 1034).

---

[5] "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd*, 239 F.3d at 701 n2 (citing AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV)).
  A GAF of 51-60 is defined as "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, no friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, DSM-IV, pg. 32.

He had been out of his Prozac for the last month. *Id.* He described a low mood, lack of motivation, and difficulty sleeping. *Id.* He often went home from work and would lie around until bedtime. *Id.* The social worker assigned a GAF of 55. *Id.* On August 8, 2016, his prescription was changed to Wellbutrin. (Tr. 1035).

On October 24, 2016, plaintiff was seen by VA staff physician, Shireesha Palla, who noted that he had uncontrolled diabetes, with "adv" compliance because he missed his doses. (Tr. 1017-1022). His hyperlipidemia was stable; his diabetic neuropathy was stable on Gabapentin; his depression was doing well; he had chronic low back and abdominal pain that was treated with Tramadol for years. *Id.* Webb reported acute general joint pain in his stomach, back and both sides that was present all of the time for months. (Tr. 1026).

An October 26, 2016, pancreatic lab test was normal. (Tr. 1013-1014).

A November 28, 2016, ultrasound of the kidneys showed an enlarged prostate. (Tr. 911). There was no nephrolithiasis or hydronephrosis. *Id.*

A December 15, 2016, ophthalmology clinic appointment revealed visual acuity correctable to 20/20 bilaterally. (Tr. 1005-1007). Webb had reduced visual fields. *Id.* He was to continue his eye drops and follow-up in six months. *Id.* He had zero pain. *Id.*

On January 9, 2017, Webb went to the VA clinic for follow-up for a painful callous on the bottom of his left big toe. (Tr. 1004). He underwent debridement of the lesion and reduction of toenails. *Id.*

## **Analysis**

In her decision, the ALJ reviewed the available evidence, including the hearing testimony, the medical treatment history, and the findings of the non-examining physician, James Crout, M.D. -- the lone physician of record to consider the effects of plaintiff's impairments. (Tr. 13-17). Ultimately, the ALJ premised her RFC on the limitations assessed by Dr. Crout, to

which she assigned "great weight." *Id*. Overall, however, she assigned only "partial weight" to Dr. Crout's assessment because it did not contemplate the visual field limitations caused by plaintiff's glaucoma. *Id*. To accommodate this impairment, the ALJ restricted plaintiff from working around unprotected heights and dangerous, moving machinery. *Id*.

Plaintiff contends that the ALJ failed to properly apply the second step of the two-part test that the Commissioner is required to apply when evaluating the "credibility"[6] of the claimant's self-description of his limitations. The court observes that a claimant's statements about his pain or other symptoms, alone, do not suffice to establish disability. 20 C.F.R. § 404.1529(a). Rather, there first must be objective medical evidence from an acceptable medical source to show that the claimant has medical impairment(s) that reasonably could be expected to produce the pain or other symptoms alleged. *Id*. Second, "[o]nce a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity." *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir.1995) (citing *inter alia*, 20 C.F.R. § 404.1529).

Of course, when assessing disability, the ALJ is required to consider all symptoms, including pain, and the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence, together with other evidence. 20 C.F.R. § 404.1529(a). In evaluating the intensity of symptoms, including pain, the ALJ will consider all available evidence such as medical history, medical signs and laboratory findings, and statements about how the symptoms affect the claimant. *Id*. The ALJ also must consider inconsistencies in

---

[6] In 2016-2017, the Commissioner issued a new social security ruling that dispensed with the term "credibility" because it was not used in the regulations. *See* Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (Oct. 25, 2017).

the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). However, the ALJ need not follow formalistic rules in her assessment. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Relatedly, pain is considered disabling under the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990). The ALJ's decision regarding the actual extent of plaintiff's complaints of pain is entitled to considerable judicial deference if supported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Factors that the ALJ may consider in evaluating the claimant's subjective complaints include: (1) claimant's daily activities; *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); *Reyes v. Sullivan*, 915 F.2d, 151, 155 (5th Cir. 1990); (2) medication the claimant takes for pain; *Anthony v. Sullivan, supra; Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa, supra; Nickerson v. Secretary of Health and Human Services*, 894 F. Supp. 279 (E.D. Tex. 8/3/1995); (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa, supra;* and (5) external manifestations of debilitating pain such as marked weight loss. *Falco, supra*; *see also* 20 C.F.R.§§ 404.1529(c)(3)(i)-(vii).

Plaintiff contends that the ALJ failed to consider several of the § 404.1529(c) factors in her resolution of plaintiff's subjective description of his symptoms. For example, he notes that the ALJ failed to mention the type, dosage, effectiveness and side effects of his medication. He further complains that she did not discuss the location, duration, frequency, and intensity of his

pain. Plaintiff also faults the ALJ for only documenting his daily activities that support the RFC, and completely failing to acknowledge his exemplary work history, plus military service.

Upon review, however, the court finds that the ALJ substantially complied with the applicable regulatory requirements. The ALJ dutifully recounted the hearing testimony provided by plaintiff, together with information that he provided in his function report. *See* Tr. 13-17.[7] Ultimately, however, she determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record for reasons set forth in the decision. (Tr. 16).

It is manifest that "the ALJ must *consider* all the record evidence and cannot 'pick and choose' only the evidence that supports h[er] position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir.2000) (citations omitted) (emphasis added). At the same time, however, "the ALJ need not *discuss* every piece of evidence in the record." *Bordelon v. Shalala*, 41 F.3d 661, 1994 WL 684574 (5th Cir. Nov. 15, 1994) (unpubl.) (emphasis added). Indeed, even an ALJ's failure to discuss such seemingly material evidence as the opinions of a medical and a vocational expert does not require remand where the ALJ stated that the opinion was based on consideration of evidence in the entire record. *Daniels v. Apfel*, 181 F.3d 97, 1999 WL 346976 (5th Cir. May 20, 1999). Here, the ALJ acknowledged that she considered the "entire record" and the evidence therein. (Tr. 15-16).

The court further notes that, at the administrative hearing, the ALJ elicited testimony from plaintiff regarding his medication and associated side effects. (Tr. 35-37). Plaintiff even admitted that his medicine "kind of helps" his pain, such that he only has to take the pills twice

---

[7] The ALJ discussed some of the evidence at step two of the sequential evaluation analysis.

per day. *Id*. Webb further testified that he remained at work for seven hours per day, albeit he sometimes has to work slow and take breaks. (Tr. 37). The ALJ also questioned Webb about the physicians that he saw at the Shreveport VA hospital and the Monroe VA. (Tr. 37). This testimony, when coupled with the voluminous VA medical treatment notes that comprise this administrative record, means that the ALJ knew well that the claimant was eligible for treatment at VA facilities, which ordinarily suggests past military service. Moreover, Webb point-blankly told the ALJ at the hearing that he had been in the military for quite a while, including three battles. (Tr. 39).

Also, at the hearing, the ALJ briefly noted specific jobs from plaintiff's work record over the past 15 years. (Tr. 33-34). Of course, to do so, she would have had to review his work history. (Tr. 33-34). Moreover, the ALJ confirmed from plaintiff that he applied for all kinds of jobs in 2015 during the time that he received unemployment benefits. (Tr. 34).

In support of his argument that the ALJ erred by failing to discuss his excellent work history, plaintiff cited a case in which the court stated that it "agrees that the solid 30–year work history described in plaintiff's brief should have been a consideration in assessing credibility." *Roberson v. Colvin*, No. 13-197, 2015 WL 1408925, at *7 (N.D. Tex. Mar. 27, 2015). In *Roberson*, however, the court went on to hold that "while it would have been better for the ALJ to acknowledge plaintiff's 30–year consistent work history, the failure to reference such in his findings does not mean [the ALJ] was not aware of the history. No reversible error has been shown." *Roberson, supra*. The same result obtains here.

Plaintiff also takes issue with the ALJ's failure to discuss several instances in the medical record that purportedly document his chronic lower back pain. *See* Pl. Brief, pg. 6. Upon review

13

of these record citations, however, almost all of the instances pertain either to an exacerbation during plaintiff's hospitalization in September 2015, and/or to his abdominal pain.

Regarding the ALJ's alleged selective recitation of plaintiff's description of his activities of daily living and self-described limitations, the court notes that the ALJ did document some of plaintiff's allegations, including his fatigue, fainting, and difficulties with postural activities. (Tr. 16). Certainly, the efficacy of plaintiff's testimony that his sister would not let him cook because of his sleepiness and/or forgetfulness is belied by the fact that he was employed as a cook throughout the relevant period. (Tr. 42-43, 33). Moreover, while plaintiff may not like it, the fact that he is able to work regularly and consistently on at least a part-time basis at the *medium* exertional level, provides some support for the ALJ's finding that he is able to work full time at the less-physically demanding *light* exertional level, with additional restrictions. (Tr. 16-17).

Relatedly, plaintiff also contends that the ALJ failed to comply with Social Security Ruling 96-8p and *Myers v. Apfel,* 238 F.3d 617, 620–621 (5th Cir.2001), which specify, *inter alia*, that the RFC must be a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, SSR 96-8P (JULY 2, 1996) ("SSR 96-8p"). Here, however, the ALJ relied, in no small part, upon the RFC completed by the agency physician, which contained a general evaluation of plaintiff's impairments, and a function-by-function analysis of the limitations imposed by those impairments. This medical report, when combined with the ALJ's appraisal of the testimony and the remainder of the record satisfies the requirements of SSR 96-8p, and its associated regulations. *Beck v. Barnhart*, 205 Fed. Appx.

207, 214 (5th Cir.2006) (citation omitted); *Onishea v. Barnhart*, 116 Fed. Appx. 1, 2 (5th Cir.2004).

In the end, it is clear that the ALJ grounded her decision on the opinion of the non-examining agency physician, portions of plaintiff's testimony, and the fact that he worked on a consistent and regular basis, albeit not at the substantial gainful activity level. The court finds that the ALJ's assessment of plaintiff's subjective complaints and symptoms satisfied the requirements of 20 C.F.R. § 404.1529, and that her determination is supported by substantial evidence. *See Giles v. Astrue*, 433 Fed. Appx. 241, 249 (5th Cir.2011) (ALJ's appraisal of plaintiff's subjective complaints is supported by his discussion of medical records and opinions); *Herrera v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 899, 905–06 (5th Cir.2010) (ALJ complied with SSR 96-7p [now SSR 16-3p] by thorough consideration and discussion of the relevant medical evidence); *Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. 2007) (opinion as a whole gave sufficient reasons and documentation for the ALJ's resolution of subjective evidence); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. 2008) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 278 Fed. Appx. 333 (5th Cir. 2008) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

To the extent that the ALJ should have recited all of the unfavorable evidence in this lengthy administrative record, the Fifth Circuit repeatedly has emphasized that "[p]rocedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Here, the ALJ's alleged failure to discuss all of the evidence in the record does not cast doubt upon whether her decision is supported by substantial evidence. To the contrary, there is substantial evidence to support her RFC, and there is nothing to suggest that any

unfavorable evidence was overlooked such that remand is required for her to explicitly mention it.[8]

### Conclusion

The ALJ in this case was tasked with determining whether plaintiff was disabled. In so doing, she considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence was, by no means, uniform and could have supported a different outcome. Such conflicts in the evidence, however, are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir. 2000).[9] That is not to say that the Commissioner's decision necessarily is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that the claimant is not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Judgment will be entered

---

[8] Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen,* 864 F.2d 333, 334 (5th Cir. 2007).

[9] Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue,* 400 Fed. Appx. 929 (5th Cir.2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here.

accordingly.

In Chambers, at Monroe, Louisiana, this 27th day of January 2020.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE